UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNIE WHITBY,

                       Petitioner,                       Case No. 1:21-cv-11362

v.                                       Honorable Thomas L. Ludington
                                           United States District Judge

JAMES SCHIEBNER, warden,[1]

                       Respondent.

_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS,
DENYING CERTIFICATE OF APPEALABILITY, AND DENYING LEAVE TO
PROCEED *IN FORMA PAUPERIS* ON APPEAL**

In 2016, Petitioner Kennie Whitby was convicted in the 44th Circuit Court in Livingston

County, Michigan on one count of first-degree home invasion, thirteen counts of armed robbery,

and one count of resisting and obstructing a police officer related to a June 2015 armed robbery in

Detroit. Importantly, Petitioner was not physically present during the robbery, and was instead

charged and convicted for planning the robbery, under an aiding-and-abetting theory.

In June 2021, Petitioner—while confined at the Muskegon Correctional Facility in

Michigan—filed a *pro se* petition for a writ of habeas corpus arguing (1) the search of Petitioner's

cell phone during his custodial interview violated the Fourth Amendment and his counsel was

ineffective for failing to challenge the search before trial; (2) Petitioner was never advised of his

---

[1] The proper respondent in a habeas case is the Petitioner's custodian, that is, the warden of the facility where the Petitioner is incarcerated. *See Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *see also* Rule 2(a) foll. 28 U.S.C. § 2254. Although Petitioner's Habeas Petition lists Noah Nagy as the Respondent, ECF No. 1 at PageID.1, and the Government's Answer lists Sherman Campbell, ECF No. 10 at PageID.116, the current Warden of the Muskegon Correctional Facility is James Schiebner. *Muskegon Correctional Facility (MCF)*, MICH. DEP'T OF CORR. https://www.michigan.gov/corrections/prisons/muskegon-correctional-facility (last visited July 12, 2024) [https://perma.cc/7AJE-UMWF].

*Miranda* rights during his custodial interview and was questioned despite invoking his right to counsel; (3) the state trial court erred by not instructing the jury on Petitioner's purported alibi defense; (4) his counsel was constitutionally ineffective for failing to challenge his arrest as unlawful, both because it was without a warrant and because Petitioner was not arraigned until "63½ hours" later; and (5) Petitioner's appellate counsel was constitutionally ineffective for failing to argue the trial court erred by not offering an alibi instruction. For various reasons discussed below, each of these claims fail. Petitioner's Petition for Writ of Habeas Corpus will be dismissed with prejudice, a certificate of appealability will be denied, and Petitioner will be denied leave to appeal *in forma pauperis*.

## I.

In May 2016, a jury convicted Petitioner Kennie Whitby in the 44th Circuit Court of Livingston County on one count of first-degree home invasion in violation of MICH. COMP. LAWS 750.110a(2), thirteen counts of armed robbery in violation of MICH. COMP. LAWS 750.529, and one count of resisting and obstructing a police officer in violation of MICH. COMP. LAWS 750.81d(1). *See* ECF No. 10 at PageID.121. The following facts recited by the Michigan Court of Appeals are presumed correct on habeas review. *Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).

> The charges against [Petitioner] arise from the June 5, 2015 robbery of a weekly card game held in the walkout basement of Mary Pezzoni's home. Around 1:00 a.m., three men entered the home uninvited, armed with a bat, a baton, and a gun, and took money, keys, cell phones, and wallets from the players at the card table. One of the robbers held Pezzoni's boyfriend, and then Pezzoni, at gunpoint, demanding to know the location of "all the money." After rifling through various items in the basement, taking $320 from a cashbox in a cabinet, and grabbing bottles of alcohol, the robbers went upstairs, exited the house through the garage, and made their getaway in a Buick belonging to Virginia Hill, [Petitioner]'s sister and mother of two of the robbers. Pezzoni called 911, and within 12 hours of the incident, law enforcement officials had four people in custody—Toursean Pressley,

Tyler Ayers, Terence Ayers, and Jemantae Perkins—all of whom implicated [Petitioner] as having "put them up to it."

Michigan State Police (MSP) Lieutenant Joseph Brodeur, at the time a sergeant, made contact with [Petitioner] at a downtown Brighton brewery, informed [Petitioner] that a parole violation warrant had been issued for his arrest, and escorted him out of the brewery to handcuff him in relative privacy. Once outside and at Brodeur's patrol vehicle, [Petitioner] put his hands behind his back as if awaiting the handcuffs, and then ran. Authorities apprehended and arrested [Petitioner] a short while later and took him to the MSP post in Brighton, where Trooper Andrew Hayes conducted a custodial interrogation. The trial court suppressed much of the interrogation when, subsequent to a *Walker* hearing, the court determined that Trooper Hayes had continued to ask [Petitioner] questions after [Petitioner] requested a lawyer. Toward the end of the interview, [Petitioner] signed a consent form allowing troopers to retrieve electronic data from his cell phone.

At [Petitioner]'s trial, the jury heard testimony about the robbery from Pezzoni and the victimized card players. The jury also heard Pezzoni testify that [Petitioner] had come to her house a few Thursday nights to play poker, that the last time he had played the stakes had reached $20,000, and that he had recently asked if the games were still being played. Neither Pezzoni nor any of the players testified that they saw [Petitioner] on the night of the robbery. Various law enforcement officials testified to how they apprehended the Buick and arrested its driver within minutes of the robbery, and to their encounter with [Petitioner] and his car in the driveway where they apprehended the Buick. Terence Ayers testified to the roles each of the four perpetrators played in the robbery and to [Petitioner]'s part in planning and executing the scheme. MSP Detective Sergeant Scott Singleton testified that he physically searched [Petitioner]'s phone and reviewed phone records from [Petitioner]'s service provider obtained pursuant to a search warrant. Singleton said he found text messages between [Petitioner] and Toursean Pressley, one of defendant's nephews, planning the crime, and text messages between [Petitioner] and his sister, Virginia Hill, apologizing after the crime for getting her sons—Toursean and Tyler Ayers—into trouble. The prosecution admitted the text of the messages into evidence, and provided copies of the text to the members of the jury. After closing arguments, the trial court instructed the jury on the law; both attorneys expressed satisfaction with the court's instructions. The jury deliberated just under two hours before returning guilty verdicts on all counts.

*People v. Whitby*, No. 334737, 2017 WL 6624287, at * 1 (Mich. Ct. App. Dec. 28, 2017) (footnote omitted).

The Michigan Court of Appeals affirmed Petitioner's conviction on direct appeal in December 2017, *see id.*, at \*11, and the Michigan Supreme Court denied Petitioner leave to appeal. *People v. Whitby*, 917 N.W.2d 53 (Mich. 2018).

In early 2020, the Livingston County Circuit Court denied Petitioner's post-conviction motion for relief from judgment. *People v. Whitby*, No. 15-0000022864-FC (44th Cir. Ct. of Livingston Cnty., Mich., Jan. 9, 2020). Petitioner then filed a "Motion for Relief from Judgment to Permit Amendment/Supplication to 6.500" but the Livingston County Circuit Court denied that motion, too. *People v. Whitby*, No. 15-0000022864-FC (44th Cir. Ct. of Livingston Cnty., Mich., Feb. 19, 2020). Petitioner then filed a third motion entitled "Motion for Relief from Judgment to Permit/Amend/Supplement/Add Issue to 6.500 (MCR 6.502(F))" which the Livingston County Circuit Court construed as a motion for reconsideration and denied, holding that it was "obligated to return without filing any successive motions[.]" *People v. Whitby*, No. 15-0000022864-FC (44th Cir. Ct. of Livingston Cnty., Mich., Mar. 13, 2020). Both the Michigan Court of Appeals and the Michigan Supreme Court denied Petitioner's subsequent efforts to appeal. *See People v. Whitby*, No. 353624 (Mich. Ct. App. Sep. 30, 2024); *People v. Whitby*, 957 N.W.2d 774 (Mich. 2021).

On June 1, 2021, Petitioner turned to federal court and filed a petition for a writ of habeas corpus. ECF No. 1.

## II.

A petition for a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings" unless the state court decision:

> (1) was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of federal law occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

A federal court may not "issue [a habeas] writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Instead, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of that decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, to obtain habeas relief in federal court, a state prisoner must show the state court's rejection of his or her claims were "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III.

Petitioner asserts the following five grounds for habeas relief:

I. Warrantless cell phone search, ineffective assistance of counsel; Fourth, Sixth, and Fourteenth Amendment [] violations. During [Petitioner's] custodial interrogation, the Michigan State Police powered on [his] cell phone, searched the

data, and retrieved data that was eventually used to complete a consent to search form which [Petitioner] later signed. This search was performed without a warrant or [Petitioner's] consent, trial counsel failed to argue the issue at *Walker* hearing.

II. During custodial interrogation [Petitioner] was denied counsel after making request. [Petitioner] was not advised of *Miranda* warnings.

III. The trial court denied request for alibi jury instruction, denying a fair trial and right to present a defense.

IV. Trial and appellate counsel failed to investigate arrest for a warrantless arrest and probable cause to arrest; [and]

V. Appellate counsel failed to investigate and raise a preserved, strong, and critical ground.

*Id.* at PageID.6–13. Each ground will be addressed in turn.

### A.

In his first ground for habeas relief, Petitioner seemingly argues that, during his custodial interview, his cellphone was searched without a warrant or his consent in violation of his Fourth Amendment rights; and, separately, that his counsel was ineffective for "fail[ing] to argue th[is] issue" before trial, in violation of his Sixth Amendment rights. ECF No. 1 at PageID.6.

Petitioner's first argument is unreviewable. Federal habeas review of a petitioner's unlawful search or seizure claim is barred where the state provided a full and fair opportunity to litigate such claims. *Stone v. Powell*, 428 U.S. 465, 494–95 (1976) ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

The Sixth Circuit has promulgated a two-step inquiry to assess whether a petitioner was afforded such "full and fair opportunity." First, "the district court must determine whether the state procedural mechanism, in the abstract, presents *the opportunity* to raise a [F]ourth [A]mendment

claim. *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982) (emphasis added). "Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Id.* Accordingly, the key inquiry is whether a habeas petitioner had an *opportunity* to litigate his or her claims, not whether he or she actually did so or even whether the Fourth Amendment claim was correctly decided. *See Wynne v. Renico,* 279 F. Supp. 2d 866, 892 (E.D. Mich. 2003); *rev'd on other grounds*, 606 F.3d 867 (6th Cir. 2010).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Lovely v. Jackson*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004), *aff'd*, 173 F. App'x 437 (6th Cir. 2006) (collecting cases). Here, Petitioner exercised this procedural mechanism by arguing, during his post-conviction direct appeal, that the Livingston County Circuit Court "should have suppressed the information obtained from his cellphone because it was obtained in a coercive environment, he did not understand the process of consent and the true significance of the consent form, and the [MSP] troopers began to search his [cell]phone before he ever gave consent," in violation of the Fourth Amendment.[2] *People v. Whitby*, No. 334737, 2017 WL 6624287, at *2 (Mich. Ct. App. Dec. 28, 2017). It matters not that Petitioner waited until *after* his conviction to assert his Fourth Amendment argument on direct appeal. *See Rashad v. Lafler*, 675 F.3d 564, 570 (6th Cir. 2012) (rejecting federal habeas review

---

[2] Although irrelevant to the "full and fair opportunity" inquiry, the Michigan Court of Appeals notably rejected Petitioner's argument that the cellphone data should have been suppressed as fruits of an unlawful, nonconsensual search. *People v. Whitby*, No. 334737, 2017 WL 6624287 (Mich. Ct. App. Dec. 28, 2017) (finding Petitioner consented to the search of his phone and that the search was reasonable under the Fourth Amendment, in part because "[t]he unequivocal quality of [Petitioner]'s consent [was] reflected in his expression of approval of the completed consent form" which clearly identified Petitioner's cellphone by "brand name, model, and serial number" and because MSP officers asked Petitioner "several questions about the proposed search of his phone, thus allowing [him] to give his consent intelligently"). And the Michigan Court of Appeals' conclusion was not contrary to federal law nor unreasonable. Thus, even if Petitioner's first claim for habeas relief was reviewable, it would be rejected on the merits.

and finding petitioner had "full and fair opportunity" to litigate Fourth Amendment claim when the claim was raised on direct appeal of petitioner's conviction); *Lovely*, 337 F. Supp. 2d 969, 976 (E.D. Mich. 2004), *aff'd*, 173 F. App'x 437 (6th Cir. 2006) (finding petitioner who raised a Fourth Amendment issue "on direct appeal" was afforded a full and fair opportunity to litigate the issue, and rejecting habeas review). And the fact that Petitioner proceeded *pro se* similarly does not render his opportunity to litigate his Fourth Amendment claim in state court "unfair" to afford federal habeas review. *See Bailey v. Bazzle*, 628 F. Supp. 2d 651, 653, 657-58, 668 (D.S.C. 2008) (finding federal habeas petitioner had full and fair opportunity to litigate Fourth Amendment claim, precluding habeas review, when petitioner addressed the issue by proceeding *pro se* in state court). Thus, Michigan courts afforded Petitioner a full and fair opportunity to litigate his claim that MSP's search of his cellphone violated the Fourth Amendment. This Court cannot review the same claim as a ground for federal habeas relief.

To the extent Petitioner argues, separately, that his trial counsel was constitutionally ineffective by *failing to challenge* the cellphone search for lack of warrant or consent, that claim fails because the Michigan Court of Appeals already rejected it, and that Court's rejection was not objectively unreasonable nor contrary to federal law. *See People v. Whitby,* No. 334737, 2017 WL 6624287, at *2–3 (Mich. Ct. App. Dec. 28, 2017) (finding Petitioner validly consented to the search of his cellphone and rejecting Sixth Amendment ineffective assistance of counsel claim because the cellphone search was not a critical stage).

### B.

Petitioner next seeks habeas relief because "during [his] custodial interrogation," MSP obtained evidence from him in violation of his Fifth Amendment right against self-incrimination and his Sixth Amendment right to counsel. *See* ECF No. 1 at PageID.8. Petitioner asserts two

specific and separate arguments on this point, each of which will be addressed in turn.

**1.**

First, Petitioner argues that the 44th Circuit Court should have suppressed statements from his custodial interview because he was never advised of his *Miranda* rights. ECF No. 1 at PageID.8. In support of this argument, Petitioner points to the fact that Trooper Hayes did not record himself when he claims he advised Petitioner of his *Miranda* rights. *See* ECF No. 1 at PageID.8.

But Petitioner made a similar argument on direct appeal, and the Michigan Court of Appeals rejected it:

> [Petitioner] advances several arguments for suppressing his custodial interview and any evidence arising therefrom. He first contends that the trial court should have suppressed the entire interview on the ground that there was no memorialization of Trooper Hayes advising him of his *Miranda* rights. We disagree. Notably, [Petitioner] does not assert that Trooper Hayes failed to advise him of his *Miranda* rights or that [he] did not initially waive those rights. Rather, [Petitioner] bases his argument for suppression on lack of a videorecording of Trooper Hayes advising him of his rights or of a signed waiver indicating that defendant understood and waived those rights.
>
> . . .
>
> Trooper Hayes testified at the suppression hearing that although he thought his custodial interrogation of [Petitioner] was being recorded, he was informed that "the very first couple of minutes" of the interview were not recorded; these included Hayes's notifying [Petitioner] of his *Miranda* rights. Hayes said he informed [Petitioner] of his rights using a card he had received and kept in his pocket since his days in training, and concluded the advisement by asking if [Petitioner] understood the rights and if he waived them. Hayes testified that [Petitioner] answered both questions affirmatively. Hayes read into the record the statement of *Miranda* rights printed on the card, and the prosecution entered the card into evidence. [Petitioner] did not dispute Hayes's account of the initial minutes of the custodial interview. The [44[th] Circuit Court] found Hayes's testimony concerning the initial few minutes of the interview credible. Based on the record evidence, we cannot say that the trial court clearly erred in declining to suppress the entire interview based on the lack of a videorecording of Hayes informing defendant of his *Miranda* rights.

*People v. Whitby*, No. 334737, 2017 WL 6624287, at *2 (Mich. Ct. App. Dec. 28, 2017).

Notably, the Michigan Court of Appeals did not squarely consider the argument that Petitioner presents here: that he was never advised of his *Miranda* rights in the first instance. *See id.* Instead, the Michigan Court of Appeals rejected Petitioner's prior argument that his custodial statements should have been suppressed from trial because there was no recording *confirming* that Petitioner was read his rights. *See id.* However, in so doing, the Michigan Court of Appeals expressly upheld the Livingston County Circuit Court's finding that Trooper Hayes was credible when he testified that he, in fact, read Petitioner his *Miranda* rights prior to Petitioner's custodial interview. *See id.* ("Hayes said he informed [Petitioner] of his rights . . . The [44th Circuit Court] found Hayes's testimony concerning the initial few minutes of the interview credible. Based on the record evidence, we cannot say that the trial court clearly erred.")

Federal courts must presume that state courts correctly analyze the facts. *See* 28 U.S.C. § 2254(e)(1). This presumption of correctness extends to factual findings made by state appellate courts—such as the Michigan Court of Appeals—on the basis of its review of state trial court records—such as transcripts of Petitioner's Livingston County Circuit Court jury trial. *See Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) (citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981)). Moreover, this presumption of correctness "also applies to those implicit findings of fact that are inherent in [a state court's] resolution of conflicting evidence." *McPherson v. Woods*, 506 F. App'x 379, 387 (6th Cir. 2012). A federal habeas petitioner can rebut this presumption only by presenting clear and convincing evidence that a state appellate court's factual determinations are incorrect. 28 U.S.C. § 2254(e)(1); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001).

Petitioner has not rebutted the presumption of correctness, here. Petitioner argues only that Trooper Hayes' testimony—that he read Petitioner his *Miranda* rights using a "*Miranda* card"—

was contradicted by another trooper's testimony that he witnessed Hayes read Petitioner his *Miranda* rights using a "department form." ECF No. 1 at PageID.8. But this only bolsters the conclusion that Trooper Hayes did, in fact, read Petitioner his *Miranda* rights—whether using a "card" or a "form." Regardless, without more, Petitioner's two-sentence argument is not *clear and convincing* evidence that both the Livingston County Circuit Court and the Michigan Court of Appeals incorrected concluded, as a matter of fact, that Trooper Hayes was credible when testifying he advised Petitioner of his *Miranda* rights. Petitioner is not entitled to habeas relief on this claim.

### 2.

Petitioner next argues that, during his custodial interrogation, he was "denied counsel after making [a] request" and proceeded to sign a consent-to-search form regarding his cellphone data, in violation of his Fifth and Sixth Amendment rights. *See* ECF No. 1 at PageID.8. But the Michigan Court of Appeals expressly rejected both claims:

> [T]here is no violation of [Petitioner]'s right under the Fifth Amendment to be free from compelled self-incrimination. [Petitioner] contends that Trooper Hayes's continu[ed] to question him after he invoked his right to an attorney coerced him into consenting to a search of his cell phone communications. [But] [t]he relevant portions of the custodial interview transcript show that Hayes did not engage in coercive tactics or apply pressure to [Petitioner] to obtain his consent to search his cell phone. Asking [Petitioner] for consent to search the phone after [Petitioner] had invoked his right to an attorney is not a constitutional violation. *People v. Marsack*, 586 N.W.2d 234, 239–40 (Mich. Ct. App. 1998) (holding that a defendant[']s Fifth Amendment rights were not violated by authorities asking the defendant to sign a consent form after he had asked for an attorney). In and of itself, consent "is not evidence that tends to incriminate [a defendant]." *Id.* at 239. Consent to search may lead to incriminating evidence of a testimonial nature, but unless that consent is compelled, there is no Fifth Amendment violation. As already indicated, defendant's consent to search his cell phone was not compelled; it was "unequivocal, specific, and freely and intelligently given." Accordingly, there is no violation of defendant's right under the Fifth Amendment to be free from compelled self-incrimination. . . . Finally, there is no Sixth Amendment violation because formal adversarial proceedings had not begun when Hayes asked defendant to sign the consent form. *Marsack*, 231 Mich. App. at 376–377 (the Sixth Amendment

right to counsel "attaches and represents a critical stage in the proceedings only after adversarial legal proceedings have been initiated against a defendant by way of indictment, information, formal charge, preliminary hearing, or arraignment.").

*People v. Whitby*, No. 334737, 2017 WL 6624287, at *3 (Mich. Ct. App. Dec. 28, 2017).

Petitioner has not shown that the Michigan Court of Appeals' conclusion was objectively unreasonable nor contrary to federal law. Nor could he.

The Fifth Amendment, made applicable to the states by the Fourteenth Amendment, protects an accused from compulsory self-incrimination. *See* U.S. CONST. amend. V. In *Miranda v. Arizona*, the Supreme Court held that the Fifth Amendment's privilege against compelled self-incrimination "requires a custodial interrogation to be preceded by advice that the accused has the right to an attorney and the right to remain silent." *Holland v. Rivard*, 9 F. Supp. 3d 773, 782 (E.D. Mich. 2014), *aff'd*, 800 F.3d 224 (6th Cir. 2015) (citing *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)). "It is settled law that if the accused invokes his right to counsel, 'the interrogation must cease until an attorney is present.'" *Id.* (quoting *Miranda*, 384 U.S. at 474). "Consequently, 'any *statement* taken after the person invokes his privilege cannot be other than the product of compulsion' and is thus barred from being introduced against him in a criminal proceeding." *United States v. Mays*, 683 F. App'x 427, 432 (6th Cir. 2017) (quoting *Miranda*, 384 U.S. at 474 (emphasis added)).

It is undisputed that Petitioner invoked his *Miranda* right to counsel during his June 7, 2015 custodial interview but that Trooper Hayes continued questioning. Accordingly, after an August 2015 suppression hearing, the Livingston County Circuit Court suppressed the statements Petitioner made during the interview *after* his invocation. *See* ECF No. 11-5 at PageID.326–28. But the trial court expressly held it would *not* suppress Petitioner's consent to search his cellphone, nor the data the subsequent search uncovered. *See id.* The first ruling protected and enforced

Petitioner's Fifth Amendment rights and the latter ruling did not violate Petitioner's Fifth Amendment rights. "A request to consent after the invocation of the right to counsel does not violate the Fifth Amendment because the protections of that amendment only apply to incriminating evidence of a testimonial or communicative nature." *Nicholson v. Bauman*, No. 18-CV-11665, 2021 WL 2338992, at *5 (E.D. Mich. June 8, 2021) (internal quotations and alterations omitted); *see also United States v. Cooney*, 26 F. App'x 513, 523 (6th Cir. 2002) ("The courts that have considered this issue unanimously agree that consenting to a search is not an incriminating statement under the Fifth Amendment because the consent is not evidence of a testimonial or communicative nature."). The Michigan Court of Appeals' rejection of Petitioner's Fifth Amendment argument was not objectively unreasonable nor contrary to law.

Petitioner's Sixth Amendment argument has likewise been foreclosed. Although the Sixth Amendment provides criminal defendants with a right to counsel, this right "does not attach until 'at or after the initiation of adversary judicial criminal proceedings'" such as formal charges announced in an indictment or criminal information, a preliminary hearing, or arraignment. *Nicholson v. Bauman*, No. 21-2695, 2022 WL 2661863, at *2 (6th Cir. Mar. 24, 2022) (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991)). After attachment, the Sixth Amendment right to counsel only applies at certain "critical stages" of criminal proceedings, when there is a "reasonable likelihood" that a criminal defendant will be prejudiced in the absence of counsel. *See Van v. Jones*, 475 F.3d 292, 313 (6th Cir. 2007) Petitioner was not yet criminally charged when he signed the consent-to-search form during his June 7, 2015 custodial interview. *See* ECF No. 11-26 at PageID.2394, 2401, 2552. Accordingly, the Michigan Court of Appeals correctly held that Petitioner's Sixth Amendment right to counsel had not yet attached. And, even if the judicial process had already been initiated against Petitioner at the time of his June 2015 interview, "a

defendant's consent to search is not a critical sta[g]e" because "a search does not generate evidence, but merely reveals evidence already in existence and virtually certain to be available to the government in due course." *United States v. Cooney*, 26 F. App'x 513, 524 (6th Cir. 2002) (internal quotations omitted).  Petitioner is unentitled to habeas relief on this ground.

### C.

Petitioner next argues that the state trial court erred when it denied his request to instruct the jury as to an alibi defense. ECF No. 1 at PageID.9. But the state trial court's denial, and finding of no error on appeal, was not unreasonable nor contrary to law. An alibi instruction would have been inappropriate as a matter of both fact and law.

At his 2016 trial, Petitioner requested an alibi instruction because he claimed he was at a brewery and his ex-mother-in-law's condo on the morning of the alleged home invasion and robbery. *See* ECF No. 11-21 at PageID.2356–57. But the Livingston County Circuit Court denied Petitioner's request for an alibi instruction because (1) as a threshold matter, it determined the alibi instruction was inappropriate since Petitioner was charged as *aiding and abetting* the instant robbery, thus his presence at the scene was not required to convict; and (2) Petitioner's proffered alibis "did not conflict with the period of time" during which the home invasion and armed robbery were allegedly committed. *Id.*; *see also* ECF No. 11-20 at PageID.2317. In 2020, Petitioner sought post-conviction relief from the Livingston County Court and raised the same claim he asserts here: that the Livingston County Circuit Court erred when it denied his requested alibi instruction and that this error violated his constitutional rights.

But the Livingston County Circuit Court rejected Petitioner's argument, concluding (1) it did not err, for the same reasons it denied the alibi instruction at trial; and (2) even if omitting the alibi instruction *was* erroneous, the error would not have prejudiced Petitioner because Petitioner

presented his purported alibis at trial and the jury still convicted him. *Id.* at PageID.2357 (citing

*People v. Matthews*, 413 N.W.2d 755, 757 (Mich. Ct. App. 1987) ("Since the jury convicted

defendant, they necessarily rejected his alibi claim.")).

To the extent Petitioner argues, again, that the lack of alibi instruction violated his

constitutional rights, Petitioner is not entitled to federal habeas relief. As explained by the Supreme

Court:

> The burden of demonstrating that an erroneous instruction was so prejudicial that
> it will support a collateral attack on the constitutional validity of a state court's
> judgment is even greater than the showing required to establish plain error on direct
> appeal. The question in such a collateral proceeding is "whether the ailing
> instruction by itself so infected the entire trial that the resulting conviction violates
> due process," *Cupp v. Naughten*, 414 U.S. 141, 147 (1973), not merely whether
> "the instruction is undesirable, erroneous, or even 'universally condemned,'" *id.*, at
> 146.

*Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). And Petitioner's burden in this case is "especially

heavy" because he objects to an *omitted* instruction, rather than an *erroneous* one. *Id.* at 155 ("An

omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the

law.").

Petitioner has not shown that the omitted alibi instruction so infected his trial that his

subsequent conviction violated constitutional due process. Nor could he. An alibi instruction was

inapplicable as both a matter of fact and law.

As a matter of law, an alibi instruction was unwarranted because the government never

alleged Petitioner was physically present when the armed robbery took place, and instead argued

that he aided and abetted the robbery by planning it. Accordingly, Petitioner's presence at the scene

was not necessary to convict, such that an alibi—or lack of presence—instruction was inapplicable.

*See Sorby v. Langley*, 145 F.3d 1333 (Table), 1998 WL 279365, * 4-5 (6th Cir. May 21, 1998)

(affirming district court dismissal of habeas petition arguing state trial court error in omitting alibi instruction because presence was not an element of the crime charged).

 As a matter of fact, an alibi instruction was inappropriate because Petitioners' purported alibis fell apart at trial. As alleged, the home invasion and robbery occurred at 1:00 AM on June 5, 2015 in Detroit, Michigan. ECF No. 10 at PageID.173; *People v. Whitby*, No. 334737, 2017 WL 6624287, at *1 (Mich. Ct. App. Dec. 28, 2017). Petitioner first purported to be at a Brighton, Michigan[3] brewery at the time of the robbery but security camera footage from the brewery, played at trial, did not place Petitioner at the brewery until 9:07 AM. ECF No. 11-15 at PageID.2009. Petitioner also purported to be at his ex-mother-in-law's Brighton, Michigan house the morning of the robbery, but his ex-mother-in-law testified that he did not arrive at her house until 11:00 AM. ECF No. 11-11 at PageID.1173, 1175. As Petitioner could not support his purported alibis at trial, an alibi instruction would have been futile. *See Elatrache v. Stewart*, No. 2:17-CV-12488, 2020 WL 4596816, at *3 (E.D. Mich. Aug. 11, 2020) (noting "a defendant is entitled to a jury instruction on a recognized defense only if there is sufficient evidence for a reasonable jury to find in his or her favor"); *United States v. Dye*, 508 F.2d 1226, 1231 (6th Cir. 1974) (finding no error in omitting alibi jury instruction when evidence at trial "did not account for the presence of . . . defendant at a place other than the scene of the [alleged crime] in such a way as to preclude the possibility that the defendant[] [was] actually there").

The Livingston County Court did not err when it omitted an alibi instruction, and its rejection of Petitioner's post-conviction claim to the contrary was not unreasonable nor contrary to federal law. Petitioner's third ground for habeas relief is without merit.

---

[3] Brighton, Michigan is approximately a 45-60 minute drive from Detroit, Michigan.

**D**.

Petitioner next argues that his state attorneys were constitutionally ineffective because they failed to challenge his arrest, which Petitioner alleges as unlawful because (1) it was "warrantless," and because (2) he was arraigned "63½" hours later. *See* ECF No. 1 at PageID.11. But the Michigan Court of Appeals already aptly rejected the first argument and Petitioner has not shown deficient performance nor prejudice as to the second.

In *Strickland v. Washington*, the Supreme Court promulgated the preeminent "performance and prejudice" test for whether a counsel's representation is constitutionally sufficient. A criminal defendant—or habeas petitioner—asserting ineffective assistance must show (1) that counsel's performance was objectively deficient, and (2) that the defendant was prejudiced as a result. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Under the first "performance" prong, a defendant must show that their counsel's representation "fell below an objective standard of reasonableness." *Nichols v. Heidle*, 725 F.3d 516, 539 (6th Cir.2013). However, when evaluating performance, courts must presume that the counsel's conduct "falls within the wide range of reasonable professional assistance because it is all to easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Moreland v. Robinson*, 813 F.3d 315, 328 (6th Cir. 2016) (quoting *Bell v. Cone*, 535 U.S. 685, 702 (2002)). Indeed, "defense counsel need not 'pursue every claim or defense, regardless of its merit, viability, or realistic chance for success.'" *Id.* (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)). And counsel does not render constitutionally deficient performance by failing to raise a meritless issue. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020). Under the second "prejudice" prong, a defendant must show a "reasonable probability

that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 694.

Notably, the *Strickland* standard is "all the more difficult" for a habeas petitioner to meet because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal citations omitted). Accordingly, "the question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

## 1.

Petitioner first argues his attorneys were ineffective because they failed to challenge his arrest on the grounds it was not supported by a warrant. ECF No. 1 at PageID.11. But the Michigan Court of Appeals rejected this argument, finding both that Petitioner's arrest was supported by a warrant and that, even if it wasn't, it was still supported by probable cause:

> [Petitioner] contends . . . that his arrest was unlawful because [arresting officer] Brodeur announced he was taking [Petitioner] into custody pursuant to a parole violation warrant, and the record contained no evidence that a parole violation warrant had been issued; the only document in the record was a June 3, 2015 complaint arising out of [Petitioner's] alleged operation of a motor vehicle while his license was suspended or revoked, which had not been signed by anyone but the prosecution. [Petitioner] further contends that . . . counsel rendered ineffective assistance by failing to challenge [his] arrest[.]
>
> In response to [Petitioner]'s arguments on appeal, the prosecution obtained this Court's permission to expand the record and produced a copy of the June 3, 2015 complaint, described above, that had been signed by the complaining witness and the judge as of June 5, 2015, making it an official warrant for defendant's arrest one day before Brodeur arrested him.
>
> [Moreover,] MCL 764.15(1)(g) authorizes a [police officer] to make a warrantless arrest where [they have] reasonable cause to believe that the person "has violated a condition of parole from a prison." "'Reasonable cause' means having enough information to lead an ordinarily careful person to believe that the defendant

committed a crime." *People v. Freeman*, 612 N.W.2d 824, 825 (Mich. Ct. App. 2000).

Brodeur testified that he told [Petitioner] that there was a warrant for his arrest, and wrote in a supplemental incident report that he "explained to [Petitioner] that he had a warrant for his arrest for a parole violation." Although there is no evidence in the record of an actual parole violation warrant, there was a warrant for [Petitioner]'s operating a vehicle while his license was suspended or revoked, and there is record evidence to support [Petitioner's] warrantless arrest [relative to the instant home invasion and robbery]. Brodeur knew that a crime had occurred and that the perpetrators in custody, two of [Petitioner]'s nephews, were unanimous in their accusations against [Petitioner] and his involvement in the home invasion and armed robbery. [Brodeur] investigated [Petitioner] sufficiently to know that he had his own cleaning business and that one of his clients was the downtown brewery where Brodeur went looking for him, and, evidently, that he was on parole. In light of these facts, when Brodeur actually found [Petitioner] at the brewery, he had reasonable cause to believe that [Petitioner] had violated a term of his parole from prison by aiding in a robbery. Therefore, to the extent that Brodeur arrested [Petitioner] on the belief that he had violated the conditions of his parole from prison, regardless of whether a valid warrant existed, Brodeur's warrantless arrest of [Petitioner] was lawful. *People v. Champion*, 549 N.W.2d 849 (Mich. 1996); *People v. Glenn–Powers*, 823 N.W.2d 127 (Mich. Ct. App. 2012) (holding that a valid arrest warrant was not required to make an arrest pursuant to MCL 764.15(1)(g), and the arresting officer's subjective belief that the warrant was the only basis for the arrest was irrelevant). Because Brodeur's arrest was lawful under the circumstances, [Petitioner]'s counsel did not render ineffective assistance by failing to challenge [the] arrest[.]

*People v. Whitby*, No. 334737, 2017 WL 6624287, at *7–8 (Mich. Ct. App. Dec. 28, 2017)

(footnote omitted).

The Michigan Court of Appeals holding was not unreasonable nor contrary to federal law. Petitioner's attorneys did not perform in an objectively unreasonable way by refraining from challenging Petitioner's arrest on the grounds that it was not supported by a warrant. Indeed, an arrest warrant is immaterial so long as the arresting officer has probable cause that a suspect committed a crime. *United States v. Strickland*, 144 F.3d 412, 415 (6th Cir. 1998) Probable cause is something "more than mere suspicion" but less than a prima facie case of guilt. *Id.* at 416. As the Michigan Court of Appeals concluded, the record is flush with facts demonstrating that Officer

Brodeur had probable cause to arrest Petitioner, even in the absence of a warrant. Within 12 hours of the June 5, 2015 robbery, MSP had apprehended the four suspects believed to have been *physically* involved—the getaway driver and the three suspects who broke into the house. ECF No. 11-26 at PageID.2450. Three of the four suspects expressly and immediately implicated Petitioner as planning the robbery, testifying that he had "put them up to it." *Id.* at PageID.2450–51. Two of these individuals were Petitioner's nephews. *Id.* Further, when Officer Brodeur located Petitioner at a brewery the day after the robbery, Petitioner "immediately fled on foot" and was not apprehended until nearly an hour later, through the assistance of helicopters and K-9 units. *Id.* at PageID.2453; *see also United States v. Williams*, 475 F. App'x 36, 39 (6th Cir. 2012) ("We have held that if officers have reasonable suspicion that an individual has committed or is committing a crime, and when approached by officers the individual flees or attempts to flee, the reasonable suspicion 'ripens' into probable cause.").

Because the challenge Petitioner contends his counsel should have asserted—that his arrest was unsupported by a warrant—is meritless, Petitioner's counsel cannot be said to have rendered objectively deficient performance to support an ineffective assistance of counsel claim. *See Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020). Petitioner is accordingly unentitled to habeas relief on this ground.

## 2.

Petitioner also seems to argue his attorneys were constitutionally ineffective because they failed to challenge his arrest on the grounds that more than 48 hours passed between his arrest and arraignment. *See* ECF No. 1 at PageID.11 (alleging Petitioner's arraignment occurred "approximately 63½ hours after his arrest"). But, assuming *arguendo* that more than 48 hours

passed and that Petitioner could show his counsel's deficient performance, Petitioner has not demonstrated how he was prejudiced.

Petitioner's argument is rooted in two—notably civil—Supreme Court decisions: *Gerstein v. Pugh*, 420 U.S. 103 (1975) and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991). In *Gerstein*, the Court held that the Fourth Amendment requires a prompt judicial determination of probable cause following a criminal defendant's arrest. 420 U.S. at 114. In *McLaughlin*, the Court clarified that judicial probable cause determinations held within 48 hours of a defendant's arrest will "as a general matter, comply with the promptness requirement of *Gerstein*." 500 U.S. at 56. If more than 48 hours passes between arrest and arraignment, the burden is on the *government* to "demonstrate the existence of a bona fide emergency or other extraordinary circumstance" which caused the delay. *Id.* at 57.

Here, it is undisputed that Petitioner was arraigned on June 9, 2015. ECF No. 10 at PageID.184. But it is less clear when Petitioner was arrested. Trooper Hayes testified that Petitioner was arrested on the evening of June 6, 2015. ECF No. 11-26 at PageID.2452. The Michigan Court of Appeals decision reflects the same. *People v. Whitby*, No. 334737, 2017 WL 6624287, at *8 (Mich. Ct. App. Dec. 28, 2017). But the Government cites the Livingston County Sheriff's Office Booking Report which reflects that Petitioner was arrested on June 7, 2015. ECF No. 11-20 at PageID.2339. If Petitioner was, in fact, arrested on the evening of June 6, 2015, more than 48 hours would have passed between his arrest and his June 9, 2015 arraignment.

However, even if more than 48 hours passed between Petitioner's arrest and arraignment, and assuming Petitioner could show his attorneys unreasonably and deficiently failed to assert this challenge during trial or on direct appeal, Petitioner has not and cannot show any resulting prejudice. If the government unreasonably holds a defendant for more than 48 hours between arrest

and arraignment, the remedy in a criminal case is *suppression*, not *dismissal*. *Holly v. Straub*, No. 02-10126-BC, 2004 WL 1765525, at *7 (E.D. Mich. July 19, 2004) ("The failure to arraign a defendant within the applicable time period may result in the exclusion of evidence gathered during the delay unless the delay was necessitated by a bona fide emergency or other extraordinary circumstances."). Petitioner has not identified *any* evidence gathered during this alleged and unclear delay, let alone how this evidence—if suppressed from trial—would have resulted in his acquittal. Because Petitioner cannot show sufficient prejudice on his second ineffective assistance of counsel claim, the claim does not warrant federal habeas relief.

### E.

In his final ground for habeas relief, Petitioner argues that his state appellate counsel was constitutionally ineffective for failing to argue that the trial court erred by not offering an alibi instruction to the jury. ECF No. 1 at PageID.13; *see also supra* Section III.C (disposing of Petitioner's argument that the lack of alibi instruction was, in itself, a constitutional violation which warranted habeas relief).

But counsel cannot be constitutionally ineffective for failing to make a meritless argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010); *see also Cowans v. Bagley*, 639 F.3d 241, 252 (6th Cir. 2011) ("The standard for ineffective assistance of appellate counsel mirrors the one governing the performance of trial counsel."). As discussed *supra* Section III.C., an alibi instruction was inapplicable both as a matter of fact and law, and both the Livingston County Circuit Court and the Michigan Court of Appeals correctly rejected its application. Petitioner is not entitled to habeas relief on this ground.

**IV**.

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability ("COA") is issued under 28 U.S.C. § 2253. A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal quotation and quoting citation omitted).

In this case, reasonable jurists would not debate this Court's conclusion that Petitioner is not entitled to habeas relief. Therefore, a COA will be denied. Petitioner will also be denied leave to appeal *in forma pauperis* because an appeal could not be taken in good faith. 28 U.S.C. § 1915(a)(3).

**V**.

Accordingly, it is **ORDERED** that the Petition for a Writ of Habeas Corpus, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED.**

Further, it is **ORDERED** that leave to appeal *in forma pauperis* is **DENIED.**

**This is a final order and closes the above-captioned case.**

Dated: July 24, 2024                           s/Thomas L. Ludington
                                               THOMAS L. LUDINGTON
                                               United States District Judge